IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STACIE M.,[1]

                       Plaintiff,

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                       Defendant.

Case No. 3:22-cv-01877-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Stacie M. ("Plaintiff") brings this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of her applications for Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have

consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

reasons explained below, the Court affirms the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bray*, 554 F.3d at 1222 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court may not affirm the Commissioner's decision "simply by isolating a specific quantum of supporting evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* (citing *Garrison*, 759 F.3d at 1009). Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.     PLAINTIFF'S APPLICATIONS

Plaintiff was born in 1990, making her twenty-nine years old on May 27, 2019, her alleged disability onset date.[2] (Tr. 29, 38.) Plaintiff has a high school education and has past

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 1:07-cv-

work experience as a security guard and as a caregiver/home attendant. (*Id.* at 29, 308, 334.) In her applications, Plaintiff alleged disability due to depression, bipolar mania, post-traumatic stress disorder ("PTSD"), a heart condition, and chronic pain. (*Id.* at 333.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration. (*Id.* at 149-57, 163-66.) On March 16, 2021, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 167-69.) Plaintiff and an impartial vocational expert ("VE") appeared and testified at a hearing before an ALJ on September 30, 2021. (*Id.* at 36-70.)

On November 10, 2021, the ALJ issued a written decision denying Plaintiff's applications. (*Id.* at 13-35.) On September 28, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if the claimant is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social

---

01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008) (citation omitted). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty-quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citation omitted). Thus, Plaintiff's date last insured ("DLI") of December 31, 2024 (Tr. 18) reflects the date on which her insured status terminated based on the previous accumulation of quarters of coverage. If Plaintiff established that she was disabled on or before December 31, 2024, she is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citation omitted). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 1148-49. The Commissioner bears the burden of proof at step five, where the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999)). If the Commissioner fails to meet this burden, the claimant is disabled. *See Garrison*, 759 F.3d at 1011.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 16-31.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 27, 2019, the alleged onset date. (*Id.* at 19.) At step two, the ALJ determined that Plaintiff suffers from the following severe impairments: vasovagal syncope, bipolar disorder, and PTSD. (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 19-22.)

///

///

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) can occasionally climb ladders, ropes, and scaffolds; (2) should have no more than occasional exposure to hazards (such as unprotected heights and moving mechanical parts); (3) can understand and remember short, simple instructions; and (4) has sufficient concentration, persistence, and pace to complete short, simple, repetitive tasks for a normal workday and workweek. (*Id.* at 22.)

At step four, the ALJ found that Plaintiff could not perform her past work as a security guard or caregiver/home attendant. (*Id.* at 29.) At step five, the ALJ found that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, such as work as a production assembler; assembler, electrical accessories I; or routing clerk. (*Id.* at 30.)

## DISCUSSION

Plaintiff argues that the ALJ erred by concluding that her dysmenorrhea[3] was not a severe impairment, by failing to provide legally sufficient reasons supported by substantial evidence for rejecting the clinical findings of Candyce Monteleone, QMHP ("Monteleone"), and by rejecting Plaintiff's symptom testimony without providing specific, clear, and convincing reasons. (Pl.'s Br. at 3-17, ECF No. 9.)

## I.    STEP TWO ANALYSIS

Plaintiff argues that the ALJ erred at step two by concluding that her dysmenorrhea was not a severe impairment. (*Id.* at 4-6.)

---

[3] "Dysmenorrhea is the medical term for pain experienced during menstruation." *Ambriz v. Berryhill*, No. 3:17-cv-1453-CAB-PCL, 2018 WL 2193258, at *7 (S.D. Cal. May 11, 2018) (citation omitted), *report and recommendation adopted*, 2018 WL 3323243 (S.D. Cal. July 6, 2018).

### A.    Applicable Law

At step two, "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on [the claimant's] ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). The Ninth Circuit has recognized that step two is "a de minimis screening device used to dispose of groundless claims[.]" *Id.* at 687 (simplified). Because "[s]tep two is merely a threshold determination meant to screen out weak claims[,] . . . [i]t is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987)).

A claimant bears the burden of demonstrating that an ALJ's step-two error was harmful. *See Howland v. Saul*, 804 F. App'x 467, 469 (9th Cir. 2020) (explaining that the claimant bore "the burden of demonstrating harmful error," and that the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination" (quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded by regulation on other grounds as recognized in Davis v. Kijakazi*, No. 21-3541, 2022 WL 2072656, at *1 (9th Cir. June 9, 2022))). If the ALJ resolved step two in the claimant's favor, a claimant must do two things to demonstrate harmful error.

First, a claimant must show that substantial evidence does not support the ALJ's RFC and the VE hypothetical derived therefrom. *See Havens v. Kijakazi*, No. 21-35022, 2022 WL 2115109, at *1 (9th Cir. June 13, 2022) ("[E]ven if the [step two] determination was in error, it was harmless because the ALJ considered these conditions among [the] claimed impairments in the overall [RFC] determination."); *Fowler v. Kijakazi*, No. 20-36016, 2021 WL 5823704, at *1 (9th Cir. Dec. 8, 2021) ("[A]ny error was harmless because the ALJ still resolved step two in [the

claimant's] favor and considered all medically determinable impairments (severe and non-severe) at the later steps.") (citation omitted).

A claimant can do so by demonstrating that the ALJ erred in discounting, among other things, the claimant's symptom testimony or medical opinion evidence. *See Berg v. Saul*, 831 F. App'x 849, 850 (9th Cir. 2020) (explaining that the ALJ erred in assigning significant weight to a non-examining physician's opinion and rejecting a treating physician's opinion, both of which addressed the claimant's mental impairments, and that the "errors were not harmless" because although "the ALJ permitted [the claimant's] claim to proceed past step two . . . , the errors resulted in [an RFC] that excluded the significant [and improperly discounted] limitations caused by [the claimant's] depression and other mental impairments"); *Urban v. Saul*, 808 F. App'x 453, 455 (9th Cir. 2020) ("[T]he [step two] error was not harmless here, because in determining [the] RFC, which identified no limitations stemming from [the claimant's] mental impairment, the ALJ improperly discounted the opinions of three medical providers . . . who concluded that [the claimant's] severe depression and anxiety impacted his ability to work."); *see also Venezia v. Berryhill*, 765 F. App'x 319, 320 (9th Cir. 2019) (holding that the ALJ committed harmful error in finding no severe impairment at step two because the ALJ erred in discounting the claimant's testimony and lay witness testimony).

Second, a claimant asserting that an ALJ's step-two findings resulted in harmful error must identify and detail what limitations should have been included in the ALJ's RFC determination. *See Delgadillo v. Kijakazi*, No. 20-56211, 2022 WL 301548, at *3 (9th Cir. Feb. 1, 2022) (rejecting the claimant's argument that the ALJ "failed to consider the impact of [certain] functional impairments" because the claimant's "brief . . . fail[ed] to 'detail what other physical limitations' should have been included in the RFC based on these considerations, which

overlap with points the ALJ expressly considered" (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009))); *Youngblood v. Berryhill*, 734 F. App'x 496, 498 (9th Cir. 2018) ("[The claimant] fails to identify . . . limitations that the ALJ should have incorporated into the RFC. As a result, [the claimant] has not argued the issue specifically and distinctly as required to invoke the Court's review.") (simplified); *see also Cramer v. Berryhill*, 706 F. App'x 385, 385 (9th Cir. 2017) ("Any error in failing to specifically discuss [certain impairments] at step two is harmless because the ALJ considered all the evidence in assessing [the RFC], and [the claimant] fails to identify any medical evidence supporting additional functional limitations that the ALJ did not consider." (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007))).

### B.    Analysis

The ALJ decided step two in Plaintiff's favor, concluding that Plaintiff had several severe impairments: vasovagal syncope, bipolar disorder, and PTSD. (Tr. 19.) Plaintiff bears the burden of demonstrating that the failure to include dysmenorrhea as a severe impairment was harmful error. *See Howland*, 804 F. App'x at 469 (explaining that the claimant bore "the burden of demonstrating harmful error").

Plaintiff argues that the ALJ's failure to consider the evidence related to dysmenorrhea at a later step in the sequential analysis was harmful because she demonstrated that she experienced intense pain during menstruation every month which kept her in bed barely able to walk for multiple days at a time, and that the VE testified that "missing one day a week or roughly four days a month would rule out all work at all skill levels." (Pl.'s Br. at 6, citing Tr. 68.) The Commissioner responds that any error was harmless because Plaintiff worked for more than five years after her dysmenorrhea diagnosis and because Plaintiff failed to identify any work-related limitations after her alleged onset date. (Def.'s Br. at 4-5, ECF No. 13.)

The medical records reflect that a medical provider diagnosed Plaintiff with dysmenorrhea in 2013. (*See, e.g.*, Tr. 452.) Before the alleged disability onset date, Plaintiff suffered severe uterine cramps and received treatment in the form of various prescribed pain medications, ketorolac injections, transexamic acid, and different birth controls. (*Id.* at 471, 473, 476-82, 485, 605-07, 890.) At the time of the alleged onset date (May 27, 2019), Plaintiff was several months pregnant. (*Id.* at 454.) After the birth of her child, there are a few records between October 2019 and March 2020 related to Plaintiff's ongoing uterine and pelvic pain. (*Id.* at 456, 559-65, 648, 786-87.) A medical provider changed Plaintiff's birth control and referred Plaintiff for a possible laparoscopic evaluation for endometriosis, but there is no indication that Plaintiff ever underwent the evaluation. (*Id.* at 562, 565.) There are no medical records documenting any ongoing reports of pain following March 2020 and leading up to the September 2021 hearing. At the hearing, Plaintiff testified that, when she was working, she regularly missed work due to menstrual cramps and she described that, at the time of the hearing, she still experienced monthly debilitating pain for three or four days at a time. (*Id.* at 55-57.)

In formulating the RFC, the ALJ considered "all symptoms." (*Id.* at 22.) Although the ALJ did not specifically mention dysmenorrhea, the ALJ acknowledged Plaintiff's report of ongoing pain. (*Id.* at 23.) Because of the sparse medical records about dysmenorrhea after the alleged onset date, Plaintiff largely bases her claim about pain-related absences on her symptom testimony. (*See* Pl.'s Br. at 5-6.) As discussed below, the ALJ properly discounted her symptom testimony. Further, Plaintiff fails to identify any medical opinion stating that, on average, she would miss approximately one day a week or four days a month of work. Finally, the state agency medical consultants, whose opinions the ALJ found persuasive and are unchallenged on appeal, reviewed the record and the period at issue and did not find that Plaintiff would miss

work at a rate that would preclude gainful employment. (*Id.* at 73-118, 123-48, reviewing Plaintiff's symptoms including "pain" and concluding that Plaintiff "is able to sustain a full work day/week.")

Accordingly, even if the ALJ did err at step two, Plaintiff has not satisfied her burden of demonstrating harmful error, and the Court concludes that any error was harmless. *See Emsley v. Kijakazi*, No. 22-35053, 2022 WL 17039000, at *1 (9th Cir. Nov. 17, 2022) ("Any error at Step Two is harmless because, those disputed impairments aside, the ALJ found other impairments to be severe and proceeded to Step Three. . . . [The plaintiff] also argues that this error caused 'downstream' error when the ALJ calculated [the plaintiff]'s RFC without considering all of his limitations. That corollary argument is foreclosed by the Court's ultimate conclusion that the ALJ did not err when weighing medical evidence and [the plaintiff]'s testimony."); *Richard P. v. Berryhill*, No. 18-cv-5897 MRW, 2019 WL 13244537, at *1-2 (C.D. Cal. June 10, 2019) (concluding that there was no reversible error where the plaintiff challenged the ALJ's step two determination but did not satisfy his burden of demonstrating that the physical condition materially affected his ability to work).

## II.    MEDICAL OPINION TESTIMONY

Plaintiff argues that the ALJ failed to provide legally sufficient reasons supported by substantial evidence for rejecting Monteleone's clinical findings. (Pl.'s Br. at 7-11.)

### A.    Applicable Law

As the parties acknowledge (*see id.* at 7; Def.'s Br. at 5), the new regulations regarding the evaluation of medical evidence apply here because Plaintiff filed her application on November 4, 2019. (Tr. 16); *see also Woods v. Kijakazi*, 32 F.4th 785, 787-92 (9th Cir. 2022) (observing that "[t]he new regulations apply to [a claimant's Social Security case if] . . . she filed

her claim on or after March 27, 2017[,]" and that the new regulations displace the

"irreconcilable" and "incompatible" specific and legitimate reasons standard).

The current regulations set out three categories of medical evidence: objective medical

evidence, medical opinion, and other medical evidence. *See* 20 C.F.R. § 404.1513(a)(1)-(3).

"Objective medical evidence is medical signs, laboratory findings, or both . . . ." *Id.*

§ 404.1513(a)(1).

The relevant regulation defines a "medical opinion" as follows:

> A medical opinion is a statement from a medical source
> about what you can still do despite your impairment(s) and
> whether you have one or more impairment-related limitations or
> restrictions in the following abilities: . . .
>
> (i) Your ability to perform physical demands of work
> activities, such as sitting, standing, walking, lifting, carrying,
> pushing, pulling, or other physical functions (including
> manipulative or postural functions, such as reaching, handling,
> stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work
> activities, such as understanding; remembering; maintaining
> concentration, persistence, or pace; carrying out instructions; or
> responding appropriately to supervision, co-workers, or work
> pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such
> as seeing, hearing, or using other senses; and
>
> (iv) Your ability to adapt to environmental conditions, such
> as temperature extremes or fumes.

*Id.* § 404.1513(a)(2). "Other medical evidence is evidence from a medical source that is not

objective medical evidence or a medical opinion, including judgments about the nature and

severity of your impairments, your medical history, clinical findings, diagnosis, treatment

prescribed with response, or prognosis." *Id.* § 404.1513(a)(3).

///

Under the new regulations, when the ALJ considers medical opinion evidence in the record, the most important factors when evaluating the persuasiveness are "supportability" and "consistency." *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)).

**B.    Analysis**

Plaintiff argues that the ALJ failed to provide legally sufficient reasons supported by substantial evidence for rejecting Monteleone's medical opinion. (Pl.'s Br. at 7-11.) The Commissioner responds that the cited medical records do not qualify as a medical opinion under the current regulations. (Def.'s Br. at 5-7.) The Court agrees with the Commissioner.

As context, Plaintiff received a referral for mental health services. (*See* Tr. 792-93, 1131.) She underwent a mental health screening and assessment with Monteleone. (*Id.* at 1131-54.) As part of the assessment, Monteleone noted that Plaintiff's "symptoms cause distress and impairment socially and occupationally; she reports loss of relationships and jobs." (*Id.* at 1139.) Monteleone further documented that Plaintiff's symptoms caused "clinically significant distress and impairment in healthy daily functioning (i.e. interacting with family)" and "[p]roblems to address in treatment include managing resurgence of PTSD symptoms and social functioning." (*Id.*) The assessment reviewed Plaintiff's medical history, diagnosed Plaintiff with bipolar I disorder and PTSD, and recommended a treatment plan of individual therapy sessions. (*Id.* at 1137-39.) Subsequently, Plaintiff began receiving individual therapy. (*Id.* at 1155-88.)

The parties agree that the ALJ did not specify whether the ALJ found any records or evaluation by Monteleone persuasive. (*See id.* at 16-31.) Rather, the ALJ considered the medical records generated by Monteleone in conjunction with the review of the evidence as a whole. (*See, e.g.*, *id.* at 20, citing Tr. 1141-43, 1161, 1171-72, 1177, 1180, 1182, 1184; *id.* at 26, citing Tr. 1161, 1171, 1180, 1182, 1184.)

///

"By definition, a medical opinion contains a statement regarding what the claimant can do despite [the claimant's] limitations, and whether the claimant has one or more impairment-related restrictions in work-related activities." *Albright v. Kijakazi*, No. 21-cv-00507 HG-KJM, 2022 WL 17960602, at *9 (D. Haw. Dec. 27, 2022) (citing 20 C.F.R. § 404.1513(a)(2)). Here, Monteleone's assessment "does not opine on the specific mental limitations laid out in the regulation[, a]nd it does not opine on what Plaintiff can still do despite h[er] diagnosis." *Timothy V. v. Comm'r, Soc. Sec. Admin.*, No. 6:23-cv-00341-HZ, 2024 WL 341071, at *5 (D. Or. Jan. 30, 2024). Rather, the records that Plaintiff points to fall in the category of "other medical evidence." *See id.* (concluding that a report did "not meet the definition of a medical opinion under the current regulations" and that instead the report "falls into the category of 'other medical evidence,' because it includes judgments about the nature and severity of Plaintiff's impairment, his medical history, clinical findings, and a diagnosis"); *Sandra G. v. Kijakazi*, No. 2:22-cv-958-SI, 2023 WL 4760619, at *9 (D. Or. July 26, 2023) ("[The doctor]'s report is 'other medical evidence' and the ALJ did not commit legal error by failing to articulate whether it was persuasive nor by failing to address the supportability or consistency of the report."); *Timothy H. v. Comm'r, Soc. Sec. Admin.*, No. 3:21-cv-00899-MC, 2023 WL 2597607, at *6 (D. Or. Mar. 22, 2023) (concluding that, where the doctor "did not provide an opinion as to any functional limitations regarding Plaintiff's ability to perform work activities[,]" the exam and treatment notes were "instead, 'other medical evidence' that the ALJ was obligated to consider as part of his review of the record").

Accordingly, the ALJ properly considered the records as part of the review of the evidence as a whole and was not required to evaluate Monteleone's assessment for supportability and consistency. *See Murray v. Kijakazi*, No. 22-35410, 2023 WL 3051888, at *1 (9th Cir. Apr.

24, 2023) ("The ALJ did not improperly discount an opinion from a treating physician. [The plaintiff] cites no 'opinion' attesting to [the plaintiff]'s specific functional limitations." (citing, *inter alia*, 20 C.F.R. § 404.1513(a)(2))); *Cheryl M. v. O'Malley*, No. 23-cv-0381-DEB, 2024 WL 1349041, at *4 (S.D. Cal. Mar. 29, 2024) (concluding that a mental disorders evaluation and report were not a "medical opinion" even though the report "contains statements relating to Plaintiff's intellectual functioning, social functioning, concentration and task completion, and adaptation to work or work-like situations" because the report did not address what the plaintiff could still do despite her impairments).

## III.    PLAINTIFF'S SYMPTOM TESTIMONY

Finally, Plaintiff argues that the ALJ improperly rejected her symptom testimony.[4] (Pl.'s Br. at 11-17.)

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison*, 759 F.3d at 1014 (simplified). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives specific, clear and

---

[4] It is unclear exactly what aspects of Plaintiff's symptom testimony she believes the ALJ wrongly discounted. Plaintiff focuses her challenge on the ALJ's rejection of her mental health symptoms but also appears to challenge the ALJ's rejection of her testimony regarding the severity of her episodes of dizziness, weakness, fatigue, and pain. (Pl.'s Br. at 11-15.)

convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (simplified).

### B.    Analysis

There is no evidence of malingering here, and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (Tr. 24.) The ALJ was therefore required to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ met that standard here.

### 1.    Conservative and Effective Course of Treatment

Evidence of conservative treatment can serve as a reason for discounting a claimant's testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." (quoting *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007))); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (affirming discounting of symptom testimony where the plaintiff's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"). Similarly, it is well settled that an ALJ may discount a claimant's testimony based on evidence that the claimant's symptoms improved with treatment. *See Walker v. Kijakazi*, No. 22-35351, 2023 WL 3017946, at *1 (9th Cir. Apr. 20, 2023) (concluding that the ALJ had provided specific, clear, and convincing reasons for discounting the plaintiff's subjective symptom testimony where substantial evidence demonstrated that the plaintiff's pain improved with treatment and medication); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." (citing 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1))).

"Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison*, 759 F.3d at 1017 (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200-01 (9th Cir. 2008)). "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.* (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)).

Here, substantial evidence supports the ALJ's discounting of Plaintiff's testimony on the grounds that Plaintiff managed her bipolar disorder without medication and reported improvements in her mental health symptoms. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("[T]he threshold for [substantial] evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019))) (simplified).

The ALJ noted that Plaintiff had not taken any medication for bipolar disorder for seven years and was reluctant to try medication for her bipolar disorder. (Tr. 26, citing Tr. 1161, 1171, 1182, 1246; *see also id.* at 559, "Her therapist feels that she has been handling her bipolar symptoms well without the need for medications.") At times, Plaintiff took Zoloft, which improved her mood. (*Id.* at 27, citing Tr. 1297.) The ALJ observed that Plaintiff was managing her emotions better, endorsing no panic attacks or angry outbursts, she reported a positive response to opening her inner circle to more family and friends, and her social anxiety had improved. (*Id.* at 26-27, citing Tr. 1184, 1202, 1221, 1248, 1250, 1258, 1260, 1262, 1264, 1266, 1273.) The ALJ explained that, despite one hypomanic episode in August 2020, Plaintiff asserted

that her situation was manageable, and her provider indicated that she was not engaging in risky or harmful behaviors. (*Id.* at 26, citing Tr. 1256.) Finally, after a break of many months without psychotropic medications or engagement with supportive behavioral health treatment, the ALJ observed that Plaintiff reported only some nervousness and intermittent negative intrusive thoughts. (*Id.* at 27, citing Tr. 1312-14.)

Plaintiff argues that her symptoms waxed and waned and overall demonstrate unresolved impairments. (Pl.'s Br. at 15-16.) The Court agrees that at times Plaintiff's symptoms fluctuated, but the ALJ acknowledged those episodes and explained that the evidence revealed that her symptoms were nonetheless manageable. Further, the ALJ did not conclude that Plaintiff's impairments were completely resolved, but merely that the improvements contradicted the severity suggested in Plaintiff's symptom testimony.

For these reasons, the Court finds that the ALJ appropriately discounted Plaintiff's symptom testimony on the grounds that Plaintiff managed her bipolar disorder without medication and reported improvements in her symptoms. *See Katie D. v. Comm'r, Soc. Sec. Admin.*, No. 6:19-cv-01599-MC, 2021 WL 1111143, at *3 (D. Or. Mar. 23, 2021) ("Plaintiff's limited mental health treatment . . . suggest[s] her symptoms are not as severe as alleged."); *Linda B. v. Saul*, No. 3:20-cv-00904-SB, 2021 WL 325710, at *4 (D. Or. Feb. 1, 2021) ("It was reasonable for the ALJ to discount Plaintiff's symptom testimony based on record evidence showing improvement in her mental health symptoms with treatment and medication."); *Shank v. Berryhill*, No. 16-cv-0444 (SS), 2017 WL 2505902, at *17 (C.D. Cal. June 9, 2017) (concluding that the ALJ properly discounted the plaintiff's testimony based on her conservative and effective treatment for her bipolar disorder and depressive symptoms, which were controlled by medication); *Belieu v. Colvin*, No. 13-cv-0144-TOR, 2014 WL 4656241, at *5 (E.D. Wash. Sept.

PAGE 17 – OPINION AND ORDER

17, 2014) ("[T]he ALJ reasonably determined that Plaintiff's minimal symptoms following lengthy breaks from her bipolar medications undermined her testimony of debilitating limitations."); *cf. Spears v. Saul*, 842 F. App'x 107, 109 (9th Cir. 2021) (concluding that the ALJ did not err in discounting a medical opinion because it was inconsistent with the "conservative treatment regime of medication and minimal counseling" for the claimant's bipolar disorder).

### 2.    Activities of Daily Living

An ALJ may discount a claimant's symptom testimony based on activities that are incompatible with the claimant's testimony regarding the severity of his symptoms. *See Burrell v. Colin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) (explaining that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination" (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997))); *Garrison*, 759 F.3d at 1016 (stating that a claimant's activities have "bearing on [the claimant's] credibility" if the reported "level of activity [is] inconsistent with [the claimant's] claimed limitations" (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998))). Notably, however, there must be a meaningful inconsistency between the claimant's daily activities and the symptom testimony. *See Harris v. Kijakazi*, No. 21-35136, 2022 WL 1262011, at *1 (9th Cir. Apr. 28, 2022) (holding that the ALJ committed harmful error in discounting the plaintiff's symptom testimony and explaining that the plaintiff's "limited daily activities were not meaningfully inconsistent with her symptom testimony" (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))).

Ninth Circuit authority "requires the ALJ to specifically identify the testimony from a claimant [the ALJ] finds not to be credible and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r, Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) and citing *Brown-Hunter v. Colvin*, 806

F.3d 487, 493 (9th Cir. 2015)) (simplified). In *Lambert*, the Ninth Circuit held that it was not enough for the ALJ to "not[e] generically that 'the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the objective medical and other evidence'" because "this 'boilerplate statement' . . . which is 'routinely include[d]' in ALJ decisions denying benefits, did not 'identify what parts of the claimant's testimony were not credible and why.'" *Id.* at 1277 (quoting *Treichler*, 775 F.3d at 1103). In that case, the ALJ did not identify specific activities of daily living or point to specific medical evidence that contradicted the claimant's allegations of disabling impairments, and the Ninth Circuit found that the ALJ's "high-level reasons" to discount the claimant's testimony did "not permit meaningful review." *Id.* at 1277-78.

Here, the ALJ noted that, in a pair of Function Reports, Plaintiff indicated that she had difficulty lifting, reaching, standing, walking, talking, climbing stairs, completing tasks, concentrating, understanding, following instructions, with memory, and getting along with others. (Tr. 23, citing Tr. 349, 357, 431.) However, the ALJ explained that Plaintiff also stated that she can help care for her cat and young daughter (including feeding, cleaning, bathing, reading, and playing) and can do paperwork, prepare simple meals, perform a myriad of household tasks such as cleaning, laundry, washing dishes, and "floors," go outside once in a while, go outside alone although she has a hard time doing so, go on walks, drive a car, ride in a car with others, shop in stores and by computer, pay bills and manage funds, play a puzzle game similar to Dungeons & Dragons, use Facebook, and spend time with others in person and via phone, texting, video chat, and in-game chat on a video game headset. (*Id.*) Although Plaintiff had some difficulty managing personal care such as bathing, grooming, and feeding herself on days that she was depressed or low, she implied that she had no problem with those activities on

other days. (*Id.*) Plaintiff reported she could walk for an hour before needing to stop and rest, follow written instructions "pretty well," and generally get along with authority figures well. (*Id.*)

The ALJ further explained that Plaintiff's activities of daily living noted in Plaintiff's mother's Third Party Function Report also discredited Plaintiff's testimony about the severity of her limitations. (*Id.* at 24.) Plaintiff's mother indicated that Plaintiff had some difficulty with lifting, reaching, walking, sitting, climbing stairs, memory, completing tasks, concentrating, understanding, following instructions, and getting along with others but that Plaintiff could care for her infant daughter and cat, run errands such as grocery shopping, prepare food including multi-course meals, perform basic household chores such as cleaning and laundry, go outside "all the time," go outside alone, drive a car, ride in a car with others, shop in stores and by phone, mail, and computer, pay bills and manage funds, sing and watch television, spend time with others playing games, talking, visiting friends' houses, and going out to dinner, and independently manage her personal care with no problems. (*Id.*) Plaintiff's mother testified that Plaintiff usually finishes what she starts, follows written instructions "pretty well," handles changes in routine "pretty good," gets along "pretty well" with authority figures, and generally does not have problems getting along with family, friends, neighbors, and others. (*Id.*)

Plaintiff argues that the ALJ erred by not explaining how engagement in those activities conflicted with her limitations. (Pl.'s Br. at 13.) However, this Court does not interpret *Lambert* to require the level of granularity that Plaintiff seeks. *See Lambert*, 980 F.3d at 1277 (holding that "[o]ur cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits" (citing *Treichler*, 775 F.3d at 1103)). Rather, to the extent Plaintiff argues that the ALJ improperly

discounted her testimony about her mental impairment and mental health based limitations (such as memory, concentration, understanding, and ability to complete tasks, follow instructions, and get along with others), the Court concludes that the ALJ properly relied on inconsistent testimony about her activities of daily living. For example, Plaintiff could complete a variety of household chores and responsibilities, prepare multi-course meals, go outside alone, run errands, shop in stores, go out to dinner, get along well with authority figures, and spend time with others. (Tr. 23-24.) To the extent that Plaintiff argues that the ALJ improperly discounted her testimony about her physical impairments and limitations (such as weakness, fatigue, pain, and episodes of dizziness), the Court concludes that the ALJ properly relied on inconsistent testimony about her activities of daily living. For example, Plaintiff could care for her cat and young daughter (with breaks while her mother or boyfriend babysat), shop, walk for an hour, and perform a myriad of household tasks such as cleaning, laundry, and washing dishes. (*Id.*)

Substantial evidence supports the ALJ's conclusion that Plaintiff's daily activities were inconsistent with her symptom testimony. *See Hallie B. v. Kijakazi*, No. 2:20-cv-00200-SB, 2023 WL 4864441, at *4 (D. Or. July 31, 2023) ("[T]he Court can reasonably discern from the ALJ's list of Plaintiff's alleged physical and mental health symptoms and the list of her reported daily activities that the ALJ concluded that Plaintiff's abilit[ies were] . . . inconsistent with the alleged severity of her symptoms."); *David L. v. Comm'r, Soc. Sec. Admin.*, No. 3:22-cv-01169-HL, 2023 WL 3495785, at *6 (D. Or. May 17, 2023) ("It was reasonable for the ALJ to conclude that Plaintiff's activities showing normal attention, concentration, and memory, conflicted with his testimony concerning his cognitive symptoms, and his ability to work with his hands and perform household chores undermined his testimony about balance issues and right hand pain.") (citations omitted).

### 3.    Objective Medical Evidence

The ALJ also discounted Plaintiff's allegations of disabling mental and physical health symptoms because they were inconsistent with the objective medical evidence. (Tr. 24-28.) This was a clear and convincing reason for discounting Plaintiff's testimony. *See Flores v. Colvin*, 546 F. App'x 638, 640 (9th Cir. 2013) (holding that the ALJ met the clear and convincing reasons standard in part because the ALJ discounted the claimant's testimony on the ground that it was "inconsistent with the medical evidence").

Substantial evidence supports the ALJ's findings concerning Plaintiff's mental health symptoms. The record revealed mental status exams with relatively unremarkable results, Plaintiff's mood was improved on Zoloft, she was able to engage in counseling sessions despite saying it was difficult to concentrate, she was practicing coping mechanisms such as praying, meditation, yoga, and positive thinking, and she was able to stay calm despite high stress situations in her life. (Tr. 26-27; *see also* Tr. 1250, noting that Plaintiff enjoyed having people over at her house; *id.* at 1254, reporting one instance where Plaintiff "freaked out" at her mother for the "first time in a long time"; *id.* at 1258, reporting that Plaintiff has been glad every time she overcame her hesitation and did activities with her friends; *id.* at 1262, noting that Plaintiff's mood was calm, and she appeared regulated and thoughtful throughout the session); *see Noderer v. Comm'r of Soc. Sec. Admin.*, No. 23-cv-01742-PHX-DGC, 2024 WL 2287972, at *13 (D. Ariz. May 21, 2024) (affirming the Commissioner's decision where the ALJ "carefully reviewed the medical evidence and found that Plaintiff's symptom testimony does not entirely comport with the numerous medical records reflecting normal to mild clinical findings and effective therapy" for bipolar disorder).

///

Similarly, substantial evidence supports the ALJ's findings concerning Plaintiff's physical health symptoms. After the implantation of Plaintiff's pacemaker, her syncope and palpitations decreased dramatically. (Tr. 24-25, citing Tr. 496, 527, 1200-02, 1206-08, 1277, 1281, 1283, 1299-1300.) Further, the uncontested state agency medical opinions found that Plaintiff can lift and carry twenty pounds occasionally, ten pounds frequently, and stand and walk for about six hours total in an eight-hour workday. (*Id.* at 27-28, citing Tr. 73-118, 123-148.)

In sum, the Court concludes that the ALJ provided clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony. *See Hollen v. Comm'r of Soc. Sec.*, No. 15-cv-2357-GPC (DHB), 2017 WL 1226899, at *12 (S.D. Cal. Feb. 3, 2017) (concluding that the ALJ provided clear and convincing reasons for not crediting the plaintiff's testimony given the plaintiff's activities of daily living, inconsistent mental health care, and medical expert opinions "in combination"), *report and recommendation adopted*, 2017 WL 1075194 (S.D. Cal. Mar. 22, 2017).

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision.

**IT IS SO ORDERED.**

DATED this 1st day of July, 2024.

HON. STACIE F. BECKERMAN
United States Magistrate Judge